1810.

Lessee of
M'CLEMMONS
v.
GRAHAM.

---

IRISH and others *against* the COMMONWEALTH.

IN ERROR.

*Pittsburg,*
*Tuesday,*
September 11.

THIS was a writ of error to the Common Pleas of *Allegheny* county.

By the *first* section of an act of the General Assembly, passed the 30th of *March* 1791, the respective courts of Common Pleas throughout the state, were enjoined to make an annual appointment of three reputable freeholders to audit and settle the public accounts of the treasurer and commissioners of the county. (a) By other sections of the act, very large powers were given to these auditors over persons and papers of both parties and witnesses; and in order to render their report effectual against any delinquent officer whose accounts were audited by them, the 5th section contained the following provision: " That the said auditors having examined and settled the said accounts to the best of their skill " and ability, shall report the same with the respective ba- " lances due to or from such commissioners or treasurers, to " the *next* county court of Common Pleas for such county,

If the auditors of commissioners' accounts, do not make return of their report at the *next* term of the Common Pleas after the *settlement*, the commissioners are intitled to sixty days after actual notice of such return to enter an appeal.
*Qu.* Whether such a report, though filed in the office of the Pleas, is a lien upon the estate of the delinquent commissioner, unless it is so filed by an order of the court, and an entry of such order made upon the docket or court minutes.

(a) By an act of the 15th *March* 1809, 9 *St. Laws* 42, this law is so far altered as to take the appointment of auditors from the court, and to confer it upon the people at their general elections. In other respects the act of 1791 continues in force.

1810.

Irish
*v.*
Common-
wealth.

" *who shall thereupon cause such report and settlement to be*
" *filed among the records of the said court; and such report*
" *from the time of being so filed, shall have the effect of a judg-*
" *ment* upon the lands, tenements, and hereditaments of such
" commissioner or treasurer, who shall thereby appear in-
" debted. *And if within sixty days after such report made and*
" *filed, the said commissioners and treasurers, their executors*
" *and administrators or any of them, shall enter their appeal*
" *to the said court from the said settlement or any part thereof,*
" *it shall be lawful for the court to direct an issue,* wherein
" the commonwealth shall be made plaintiff or defendant, as
" the case may require, to be tried by a jury during the next
" term, upon whose verdict final judgment shall be entered."
3 *St. Laws* 34.

At *June* term 1803, auditors were appointed by the Com-
mon Pleas of *Allegheny* to audit the accounts of the plaintiffs
in error, who were county commissioners; and they returned
a report into the office of the Common Pleas on the 13th of
*September* 1805, on which day the report was indorsed by the
prothonotary, " *Filed* 13*th September* 1805."

On the 17th *September* 1808, the commissioners appealed
from this report to the Common Pleas, and prayed the court
to direct an issue; but the court quashed the appeal, on the
ground that it was too late.

It was here, among other reasons, assigned for error, that
the report of the auditors should have been made to the next
term after their appointment; or if not, then to the next term
after the settlement, when it became the duty of the court by
a judicial order to cause the report to be filed among their
records, from which time alone the sixty days from the appeal
would run. But that the present report was not made until
more than two years after the appointment,—it did not appear
when the settlement was made, and therefore it could not
appear that it was made at the next term after the settlement,
—it was not made to any term whatever, having been filed
in vacation,—and there had been no act of the court upon it.
It followed that these irregularities would prevent the sixty
days from running at all; at all events they could not run until
actual notice of the filing had been given to the commissioners,
which was not the case here.

*It was also* assigned for error, that it did not appear that the auditors had given notice to the commissioners to attend before them, at the time of the audit.

When the case was first opened at last *September* term, their honours intimated an opinion that to make the filing of the report valid, it should be laid before the court, and an order be given for filing; but whether this had been done in the present case, they were unable to collect from the entry; they therefore recommended it to the counsel to take the record back to the Common Pleas, and endeavour to have it stated therein, whether any such order had been given by the court. At the present term, however, it being understood that the judges of the Common Pleas declined certifying in relation to the fact, this court delivered judgment upon the record as it stood.

*Baldwin* for the plaintiffs in error.

*Semple* for the defendant in error.

TILGHMAN C. J. " The act to provide a more effectual method of settling the public accounts of the commissioners of the respective counties &c." authorizes the court of Common Pleas to appoint annually, at such time as they shall think proper, three auditors, to audit, settle and adjust the public accounts of the commissioners &c. By the 5th section of this act, the auditors are directed, after having examined and settled the said accounts, to report the same to the *next* county court of Common Pleas, who shall thereupon cause such report and settlement to be filed among their records; and such report, from the time of being so filed, shall have the effect of a judgment upon the lands &c. of such commissioners &c.; and if within sixty days after such report made and filed, the said commissioners shall enter their appeal from the said settlement, it shall be lawful for the court to direct an issue &c.

In the case before us, the auditors were appointed at *June* term 1803. It does not appear at what time they settled the account of the plaintiffs in error; but they made their report of the settlement on the 13th *September* 1805, on which day

the report is indorsed " filed," in the handwriting of the pro-
thonotary. This is the only record of its being filed. Now the
13th *September* was not in term time, but during the vaca-
tion, so that it is not shewn by the record, that the report was
submitted to the court, or filed by their order. Knowing the
very informal manner in which it has been the custom to
transact business in the courts of Common Pleas, I shall al-
ways be inclined to give great indulgence to informality. I
do not think it necessary that an entry of the order for filing
the account should be made in the minutes of the court, al-
though it certainly would be best to make such an entry. I
should think the indorsement in the handwriting of the pro-
thonotary sufficient evidence of the court's order. But if such
indorsement bears date in the vacation, it will be impossible
that the report can have been *then* filed by the court's order;
and in such case the utmost that could be supposed, would
be that the paper had been filed at that time by the protho-
notary, and produced by him to the court at the next term,
who thereupon directed it to be filed. Under these circum-
stances, the lien would take effect from the *next* term. But
there is no question now concerning lien; the point is whether
the commissioners are barred of their appeal, because not
made in sixty days from the filing of the report. Whether
the report is to be made by the auditors at the next term after
their *appointment,* or the next term after the *settlement of the
account,* is not very clearly expressed. I prefer the latter con-
struction as being more agreeable to grammar, and much
more conducive to public convenience. To refer the words
*next court,* in the *fifth* section of the act, to the authority given
to the court to make the appointment in the *first* section, is
forced and unnatural, when they may be with more propriety,
referred to the *time of settlement* mentioned in the same 5th
section and immediately preceding. Besides, there could be
no good reason for tying up the auditors to make their report
at the next term after their appointment. It might be impossi-
ble to make a report in so short a time, without doing injustice
cither to the public or the accountant. But it does not appear
on this record, that the report was made to the court *next
after the settlement.* We know not when the account was
settled, for it bears no date. On this defect I found my opin-

ion. It was incumbent on the accountant to attend at the next court after the settlement in order to enter his appeal, if the report was made. But if no report was then made, the law was not strictly complied with by the auditors. To give it a liberal construction we will say, that the auditors might return it afterwards. But while we construe the law liberally with regard to the public, we must not be illiberal and oppressive to the commissioners. If the report is not made at the time when it ought in strictness to be made, the commissioners ought to have notice of the time of its being actually made, and the sixty days for entering the appeal, should run from such notice. Inasmuch then, as it does not appear, that the report was made within the time prescribed by law, nor that the plaintiffs in error had notice of its being filed sixty days before they entered their appeal, I am of opinion, that the appeal was well entered, and that the judgment of the court of Common Pleas should be reversed.

YEATES J. The act of assembly passed 30th *March* 1791 directs, that the auditors appointed annually by the courts of Common Pleas of each respective county, after having examined and settled the accounts of the treasurers and commissioners, " shall report the same with the respective balances " due to and from such commissioners or treasurers, to the " *next* county court of Common Pleas for such county, who " shall thereupon *cause* such report and settlement to *be filed* " among the records of the said court; and such report from " the time of being so filed shall have the effect of a judgment " upon the lands of such commissioner or treasurer, who " shall thereby appear to be indebted." An appeal is given, on the party's entering into recognisance with two good sureties, if entered within sixty days after such report made and filed; but in default thereof, execution shall issue in like manner, as upon judgments recovered in the usual course of law. The auditors are impowered to cause the commissioners and treasurers to come before them, and to compel the production of all books, papers, accounts and vouchers relative to the said public accounts; and also to compel the attendance of witnesses.

Three things appear necessary under the provisions of the act, to confer validity on the proceedings. 1. That the parties whose accounts are to be settled should appear before the auditors, or at least should receive notice for that purpose. 2. That the balances should be reported to the next court of Common Pleas after the appointment of the auditors, or at least after the settlement of the account; and 3. That the court should *cause the report to be filed* among their records.

1. It does not appear by the report of the auditors, that the plaintiffs in error were notified to appear before them by subpœna or otherwise; nor has any extrinsic evidence been offered or suggested to prove it. On the contrary it is expressly assigned for error, that the auditors did not call the commissioners before them to account for their proceedings. The first principles of natural justice require, that a man shall not be condemned unheard.

2. It appears by the records of the court of Common Pleas, that the three auditors were appointed in *June* term 1803, which commenced on the 27th of that month. The *next* term would be in *September* 1803 according to the law as it then stood; but the report was not filed until the 13th *September* 1805, after the intervention of eight terms, and in the vacation. The *September* term of that year began on the 23d day of the month. I am fully aware, that in many instances in different counties, reports of such auditors have been filed when the courts were not sitting; and when the court have in anywise acted upon them, as by causing them to be filed, or inserting them on the dockets, or doing any other matter of the like nature however slight, that filing them by the prothonotary in the vacation would be equivalent to a return in term time; but to give the report under such circumstances validity, it should be filed some day previous to the term next succeeding the appointment. At all events, no such surprise should be effected on the party against whom a balance is found, as should lead him to the loss of his appeal within the sixty days limited by law.

3. In the present instance, the court of Common Pleas at our last term here, declined giving any certificate, whether the report of the auditors was laid before them, or whether

they had done any act relative thereto. I regard the second ground of objection as fatal to these proceedings. Even admitting, what there is no proof or even statement of, that the plaintiffs in error appeared and were heard before the auditors, no report was made of the several balances for nearly twenty-seven months after their appointment. The time of settlement of the accounts is not stated in the report; whether the report was filed at the next term afterwards therefore cannot appear. And upon the same grounds, on which this report is attempted to be established as a lien conclusive on the commissioners, against which they can have no redress, might another report be established, made fifteen or twenty years after their appointment. Where a term is suffered to elapse, after the appointment of the auditors, before the report is made, nothing in my idea can cure the defect arising from the delay, except actual notice of the report being returned and filed. Such a step would put the accounting parties on their guard, and obviate all objections arising from surprise; but this has not been done in the case before us. If the plaintiffs in error are justly indebted to the county of *Allegheny*, in their character as commissioners, either from gross negligence in their official conduct, or otherwise, the laws afford a full and ample remedy to the good people of the county to coerce the payment thereof. But if by the present mode of procedure, the former should be precluded from a rehearing, they are wholly without remedy, though they should not be responsible for a single cent to the county. I am of opinion, that the judgment of the court of Common Pleas should be reversed.

BRACKENRIDGE J. This case turns on the construction of the act of *March* 30, 1791, and that provision of it which is in these words, " that the said auditors having examined and " settled the said accounts, shall report the same to the *next* " county court of Common Pleas of such county, who shall " thereupon *cause* such report and settlement to be filed " among the records of the said court, and such report from " the time of being so filed, shall have the effect of a judg- " ment," with an appeal if entered within sixty days, and issue to be tried by a jury, &c.

The duty prescribed to the auditors, by this act, would seem to be to report *to the court;* which could not be done unless when the court was sitting; the report being made by handing it to the clerk, in order that it may be read to the court. But I should not think this sufficient. It is their duty to see that it comes before the court actually, and not constructively by being delivered to the clerk. The clerk is not the court: he is but the officer of the court; and, in strictness, I do not know that he can be called upon to read the report, or to hand it to the court. It is an act enjoined upon the auditors themselves, to make this report; that is, to bring it into court, and deliver it. Much less can I have any idea that delivering it to the clerk in the *vacation,* is making it to the court, who, in that case, may not hear of it, until the *sixty days* have elapsed; and the party to be affected by it, may equally remain for the sixty days, without any knowledge of the delivering it to the clerk. I can have no idea that the clerk's receiving it in vacation, or even in term time indorsing upon it, *filed,* and putting it amongst his papers, is what is contemplated by the act as making it *a record.* Shall a purchaser be at the mercy of a lien which depends upon the depositing in a pigeon-hole, when he recurs to the records of the county to inspect the liens upon real estate? Shall the party against whom the report is, be at the mercy of such indorsement and depositing, of which he may not have knowledge? I cannot say that the indorsement, *filed,* carries with it evidence of an act of the court; because it purports only to be the act of the clerk in receiving it and putting it amongst his papers. I take it that a fair construction of the act requires, and the reasoning from the inconvenience and the mischief shews, that the report ought to be made in open court, and brought to the knowledge of the court that they may act upon it; that it ought to appear that they did act upon it, by an entry on the docket of the court, which is the record; and that *papers filed* are the documents to which it refers. It is the docket only which a purchaser inspects when he looks for the record of a judgment. I cannot say that the report, even being read in court and ordered to be filed and indorsed, and put in a pigeon-hole without an entry on *the docket,*

ought to be called a record within the meaning of the act; because it does not give notice.

It is alleged that nothing more is found in most counties than such filing to make a lien. But I cannot avoid considering it as insufficient to make a lien; much less preclude, after sixty days, to a person who has had no knowledge of such filing, the benefit of an appeal, and the privilege of a jury trial. If the officers of the county are guilty of an oversight or a mistake, I cannot cure their errors at the expense of an individual. If on a *certiorari* to the court of Common Pleas they could add to their return the fact that it was read; or if they certified without *certiorari*, as they were moved to do in this case, that the report actually had been read and ordered to be filed, it might suffice to support the refusing the appeal, and the privilege of a jury trial after sixty days; but I cannot see that it could be a lien against purchasers by any possible means until put upon the records of the court by an entry on the docket of the order of the court causing it to be filed; or that the report can be said to be among the records of the court so as to constitute the lien of a judgment. Even usage universal in the counties could not amount to evidence of the sense of the community upon this point, and be such a *common error* as to amount to law. I do not look to what may be a general inconvenience as to the losing the lien in some cases, so much as to the manifest injustice in this particular case, where from the court refusing to certify as to its being read in the court, there is ground to infer that it was not read, but merely handed to the clerk in vacation and deposited in a pigeon-hole, without any thing more being heard of it until after the sixty days; more especially, as it is stated in this case, that the principal defendant *Irish* was absent out of the county, and on public business, being a member of the legislature. It is the first time the construction of the act in this particular has been brought before this court, and I think it safer to *consider what ought* to be done, than what has been done; for we are to correct errors, not to sanction them from their respectability in number. The *nos numeri sumus*, will not save them with me, where such flagrant injustice may accrue to an individual, as would seem to have taken place here.

I have been struck sometimes with what takes place in the office for recording deeds, which from the necessity of the case cannot be avoided, it being impossible to copy one deed on the record until the preceding has been copied, which requires time; and hence it is the usage, which cannot be avoided, of indorsing on the deed the day it is received for recording. But the register keeps, or ought to keep, a list of such indorsements in the nature of a book of entries, which a purchaser can inspect, and will be shewn to him when he inquires for the record of a deed.

Under the act of assembly directing transcripts from a justice which are to affect as judgments, they must be entered on the records of the court, that is, *the docket.* Merely indorsing and putting into a pigeon-hole, will not suffice.

I may be mistaken, but these are my ideas of the reason and nature of the case, and from analogy to that which has the effect.of notice in other cases. While the legislature intended to secure the county by a lien, I cannot think but that, having given the benefit of an appeal, and the privilege of a jury trial, they must have meant that a defendant should have the opportunity of knowing when the report was filed; not that after he has been heard by the auditors, he has to go every day to the clerk of the court in vacation, to get him to search among his papers to see whether such a report has been delivered to him, lest the sixty days should elapse, which is not from the date of the hearing before the auditors, but *from the time of making their report*, which may be unknown to him, as in fact the case here was said to be. It would be imposing on him an unreasonable vigilance to be thus watchful; and with all his vigilance the sixty days may have elapsed before the *sitting* of the court; and it might be then said that he was too late.

In this case it was stated that there had been no hearing before the auditors; but as that does not appear upon the record, it cannot be made a ground of reversing the judgment. But taking it to be the fact, it may serve to shew the mischief that may be suffered from considering the *mere filing* a paper with the clerk, and its lying there sixty days, to become a judgment, or affect as a lien; or that this indorsement, and the court overruling the appeal on account of the lapse of

sixty days, should be supported and sanctioned by the court in the last resort.

The difficulty in this case, is the effect it may have upon the lien from the bare filing, which is said alone to appear in the returns of auditors, in *most counties throughout the state.* To leave the matter open, therefore, as to this, having thrown out these observations generally, I confine myself to what appears in this particular case, wherein the filing evidently was in the vacation; because, there does not appear to have been a court sitting at the time; and there is no evidence of the court *causing it to be filed,* unless from the implication of the court *refusing the appeal;* which their refusing to certify repels, and leaves the matter on the mere *indorsing of the clerk, and filing in the pigeon-hole.* I am therefore of opinion to *reverse the* judgment.

Judgment reversed.

### IN ERROR.

